**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MECADON** <br><br> v. <br><br> **ALLSTATE INDEMNITY CO.** <br><br> **Civil Litigation No. 09-5511-TJS** <br> **Judge Timothy J. Savage** | **KOLESAR, et al.** <br><br> v. <br><br> **ENCOMPASS INDEMNITY CO.** <br><br> **Civil Litigation No. 09-5510-TJS** <br> **Judge Timothy J. Savage** |
| **BUCARI, et al.** <br><br> v. <br><br> **ALLSTATE PROPERTY and CASUALTY INSURANCE COMPANY** <br><br> **Civil Litigation No. 09-5512-TJS** <br> **Judge Timothy J. Savage** | **WARRICK** <br><br> v. <br><br> **ALLSTATE INSURANCE COMPANY** <br><br> **Civil Litigation No. 09-6077-TJS** <br> **Judge Timothy J. Savage** |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

## <u>INTRODUCTION</u>

Plaintiffs submit this memorandum in support of their motion for preliminary approval of

a class action settlement with numerous defendants.[1]  A copy of the Settlement Agreement is

---

[1] The settling parties are Plaintiffs Ann Warrick, Deborah Kolesar, Ronald and Kim Bucari, and Nicole Mecadon (collectively, "Plaintiffs") and Defendants Allstate Insurance Company, Allstate Indemnity Insurance Company, Allstate Property and Casualty Insurance Company, Encompass Indemnity Company, Allstate Fire and Casualty Insurance Co., Encompass Home &

attached as Exhibit A.  Because the proposed settlement is within the range of possible approval, the Court should grant preliminary approval and authorize the dissemination of notice to the Settlement Class.  The Court should also approve the Notice Plan and schedule a hearing on final approval of the proposed settlement.

When a proposed class-wide settlement is reached, it must be submitted to the court for approval.  2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41, at 89 (4th ed. 2002) ("*Newberg*").  Preliminary approval is the first of three steps that comprise the approval procedure for the settlement of a class action.  The second step is the dissemination of notice of the settlement to all class members.  The third step is a final settlement approval or "fairness" hearing.  *See* MANUAL FOR COMPLEX LITIGATION § 21.63 (4th ed. 2004).

While the final approval of a class action settlement depends on whether the settlement is "fair, adequate and reasonable," the question presented on a motion for preliminary approval is whether the proposed settlement is "within the range of possible approval" sufficient to justify the expense of notifying the class of the proposed settlement.  *See Mehling v. New York Life Ins. Co.*, No. 99-5417, 2007 U.S. Dist. LEXIS 79451, at *6 (E.D. Pa. Oct. 25, 2007).  Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement … may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).  The Settlement Agreement in this case is well within the range of possible final approval, and should be preliminarily approved.

---

Auto Insurance Co., Encompass Insurance Company of America, Deerbrook Insurance Co.,  and Northbrook Indemnity Insurance Co. (collectively  "Allstate").

The settlement is the result of good faith, extensive, arm's-length negotiations between experienced and informed counsel on both sides. The parties' sometimes contentious, but ultimately successful, negotiations spanned well over a year. Significantly, the parties have completed extensive discovery related both to merits and class certification, briefed and argued motions, and retained experts who have submitted opinions. Also, during the course of their lengthy settlement negotiations, the parties took advantage of the expert assistance of Judge L. Felipe Restrepo, as well as the services of a former federal judge serving as a private mediator. As a result, Class Counsel is in an excellent position to assess the benefits of the proposed settlement. Given the extensive information produced and analyzed to date, and extensive proceedings in the litigation, the proposed settlement is clearly within the range of possible final approval warranting preliminary approval by the Court.

## PROCEDURAL HISTORY

I.   **BACKGROUND**

   A.   **Commencement of the Litigation, Class-Related Discovery, Summary Judgment in Favor of Plaintiff and Plaintiff's Amended Motion for Class Certification**

Beginning on November 19, 2009, Plaintiffs filed Complaints (Docket No. 1)[2], alleging

that Allstate violated Section 1799.1 of the Pennsylvania Motor Vehicle Financial Responsibility

Law ("MVFRL"), 75 Pa.C.S. § 1799.1 and breached standard insurance contracts with insureds

in Pennsylvania. The Complaints included additional common law claims and a claim under

Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPA"). Plaintiffs

alleged that Allstate charged them and other insureds more for automobile insurance than

Pennsylvania law permits.[3] Plaintiffs alleged that section 1799.1 of the MVFRL requires all

insurance companies authorized to write private passenger automobile insurance in Pennsylvania

to provide a ten percent premium discount on comprehensive coverage for vehicles with "passive

antitheft devices" as defined in 75 Pa.C.S. § 1799.1(b). Plaintiffs further alleged that they, and

many others in Pennsylvania, insured vehicles with Allstate that have passive antitheft devices,

but did not receive a 10 percent antitheft discount from Allstate on their comprehensive

coverage, and thus, were overcharged for their automobile insurance. Plaintiffs alleged that

Allstate's failure to provide the antitheft discount also breached Allstate's standard insurance

contracts. Plaintiffs sought damages and injunctive relief. On February 26, 2010, Allstate

answered Plaintiffs' Complaints (Docket No. 20).

---

[2]   Citations are to the docket in the first filed *Kolesar* case.

[3]   On February 23, 2010, Plaintiffs and Allstate entered into a stipulation (Docket No. 19) that Plaintiffs would voluntarily dismiss their claims in Counts IV, V, and VI without prejudice and Defendants would answer Plaintiffs' Complaints, including Plaintiffs' MVFRL and breach of contract Counts.

On January 26, 2010, following a preliminary pretrial conference, the Court issued a Scheduling Order requiring the parties to complete all fact and expert testimony by May 28, 2010 (Docket No. 16).  Under the Court's schedule, the parties exchanged written discovery requests and responses, and met and conferred on numerous occasions to resolve discovery disputes while producing discovery on a rolling basis.  Plaintiffs took the depositions of Allstate's Rule 30(b)(6) designees, and Allstate took Plaintiffs' depositions.

On May 12, 2010, the parties filed a Joint Motion for a Scheduling Conference (Docket No. 28).  The parties asked the Court to resolve anticipated summary judgment motions before any class certification motion.  On May 13, 2010, the Court issued an Amended Scheduling Order (Docket No. 33) requiring the parties to file summary judgment and class certification motions by June 30, 2010.  The Court also scheduled argument for August 11, 2010.

On May 19, 2010, the parties engaged in a settlement conference presided over by Judge Restrepo.

On June 30, 2010, the parties filed their respective motions for, and memoranda in support of, summary judgment (Docket Nos. 40, 46, 50 & 52).  Plaintiffs also filed their motions and brief in support of class certification (Docket Nos. 47).  The parties filed exhibits in support of their respective motions, and statements identifying facts that they contended were not in dispute (Docket Nos. 40, 44, 45 & 49).  The same day, Plaintiffs moved in limine to exclude the proffered expert testimony of Robert F. Mangine, Constance B. Foster, and Eugene P. Ericksen (Docket Nos. 41, 42, 54).  Plaintiffs filed corrected papers in support of their summary judgment and class certification motions on July 8, 2010 (Docket Nos. 58, 59).  The parties filed responses to each other's filings on July 16, 2010 (Docket Nos. 62-68), and reply briefs on July 26, 2010 (Docket Nos. 69-75).

On August 11, 2010, the Court held oral argument on the parties' cross-motions for summary judgment and Plaintiffs' class certification motion.  On March 29, 2012, the Court granted Plaintiffs' Motion for Summary Judgment on both their individual section 1799.1 (Count I) and breach of contract (Count II) claims as to liability only (Docket No. 90) and denied Allstate's Motion for Summary Judgment (Docket No. 85).  The Court denied as moot each of Plaintiffs' motions in limine (Docket Nos. 86-88).  Finally, the Court denied Plaintiffs' Motion for Class Certification without prejudice, ordering Plaintiffs to file another motion for class certification, consistent with the Court's Memorandum Opinion,[4] no later than May 1, 2012 (Docket No. 89).

On May 1, 2012, Plaintiffs filed their Amended Motion for Class Certification (Docket No. 91).  On May 22, 2012, Allstate filed its Memorandum in Opposition to Plaintiffs' Amended Motion for Class Certification (Docket No. 94-95).  On June 1, 2012, Plaintiffs filed a reply brief in support of class certification (Docket No. 98).  On June 18, 2012, the Court ordered Plaintiffs to submit a trial plan (Docket No. 100).  On July 11, 2012, Plaintiff filed their trial plan Docket No. 101).

On July 18, 2012, the Court held oral argument on Plaintiffs' amended class certification motion.  Before the class certification hearing, the parties engaged in settlement discussions with the assistance of retired Judge James Rosenbaum (D. Minn.).  In the months following the class certification hearing, the parties resumed settlement discussions, supervised and aided by Judge Restrepo.

In December 2012, Plaintiffs filed moved to supplement the class certification record (Docket No. 103).  The Court granted Plaintiffs' motion on January 22, 2013.  In November

---

[4]   *See Willisch, et al v. Nationwide Ins. Co. of America*, 852 F. Supp. 2d 582 (E.D.Pa. 2012).

2013, after Allstate provided supplemental interrogatory answers, Plaintiffs again moved to supplement the record and asked the Court to award attorneys' fees (Docket Nos. 112, 113). These motions were withdrawn (Docket No. 114) so the parties could focus their efforts on settlement discussions, which ultimately produced the Settlement Agreement.

## II.   THE SETTLEMENT AGREEMENT

Reflecting the benefit of the settling parties' analyses of the legal and factual issues, as well as extensive discovery, and the parties' desire to resolve the case without further litigation, the Settlement Agreement provides for benefits to be paid to Settlement Class Members in an amount up to $9,000,000, less awarded attorneys' fees and expenses, Plaintiffs' incentive awards, and other amounts set forth in the Settlement Agreement.[5] *See* Settlement Agreement, ¶¶ I(1)(x), V(1). In addition, Allstate has agreed to pay all of the costs associated with providing notice to the Settlement Class and administering the settlement, including the fees and expenses of the Settlement Administrator. *See* Settlement Agreement, ¶ IX(2). Furthermore, Allstate has agreed to "going-forward relief" for applicants in which, for a period of a minimum of two years after the Effective Date[6] and to the extent consistent with Pennsylvania law, Allstate will continue to apply an antitheft device discount of at least 10 percent to all cars where its Home Office VIN Database shows that the car has a passive antitheft device installed as part of the manufacturer's standard equipment. Settlement Agreement, ¶ V(3). This practice, which started

---

[5]   Only "Distribution Class Members," *see* Settlement Agreement, ¶ VIII ("Determining the Identity of Distribution Class Members"), receive a Class Member Award from the Settlement Fund. *See* Settlement Agreement, ¶ VII(1). A "Distribution Class Member" is a "Settlement Class Member," *i.e.*, any person who is included in the definition of the Settlement Class, *see* Settlement Agreement, ¶¶ I(1)(3), III, who also meets the criteria for receiving a distribution from the Settlement Fund, as set forth in paragraph VIII of the Settlement Agreement. Settlement Agreement, ¶¶ I(1)(o), VIII.

[6]   *See* Settlement Agreement, ¶ I(1)(q).

after the commencement of the litigation, was the subject of Plaintiffs' November 2013 motion to supplement the record and for an award of fees. In addition, Allstate will educate its agents to ask policyholders who do not automatically receive a discount to check their owners' manuals to determine whether their vehicle may have a passive antitheft device. *See* Settlement Agreement, ¶ V(4).

The monetary amount Class Members receive is based on a formula designed to provide up to 60% of the damages allegedly incurred by Class Members. The specific procedure by which this calculation will be performed is set forth in Sections V and VI of the Settlement Agreement. In essence, the parties will calculate a Net Settlement Fund which will be $9,000,000 less: (a) the attorney's fees and expenses awarded to Class Counsel, (b) the payment of up to $500,000 for the costs of administration and notice, and (c) the incentive payments awarded to the Class Representatives. The Net Settlement Fund will be used as the number from which Class Members' pro rata distribution will be determined. All Current Policyholder Class Members automatically will receive a share of the Net Settlement Fund. *See* Settlement Agreement, ¶ VIII(1). Former Policyholder Class Members will receive a share of the Net Settlement Fund if they return an "Address Verification Form" to the Settlement Administrator. Settlement Agreement ¶ VIII(2). Payments will either be in the form of credits (where feasible for current policyholders) or checks. Settlement Agreement ¶¶ VII(1-6).

Upon the Court's final approval of the settlement, Settlement Class Members will release any claims they have against Allstate that have been, or could have been, asserted in these Lawsuits relating to vehicle antitheft device premium discounts for automobile insurance policies issued in Pennsylvania. Settlement Agreement ¶¶ XV(1-7) .

# ARGUMENT

## I.    THE COURT SHOULD CERTIFY A SETTLEMENT CLASS

"The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Insurance Brokerage Antitrust Litig.*, 579 F.3d 241, 256 (3d Cir. 2008). Allstate has stipulated to class certification for settlement purposes only, with the Settlement Class defined as follows:

> All Allstate Insurance Company, Allstate Property and Casualty Company, Allstate Indemnity Company, Encompass Indemnity Company, Allstate Fire and Casualty Co., Encompass Insurance Company of America, Encompass Home &Auto Insurance Co., Deerbrook Insurance Co., and Northbrook Indemnity Co. policyholders in Pennsylvania, who at any point from November 19, 2005 through December 31, 2013 (a) had a policy of automobile insurance that included comprehensive insurance coverage; (b) whose insured vehicle(s), according to Allstate's Home Office VIN System, had a passive antitheft device installed as manufacturer's standard equipment; and (c) did not receive at least a 10% discount on the comprehensive portion of the paid premium.

Settlement Agreement ¶III(1)

The parties' previous briefing and argument addresses their positions on certification of a class for litigation purposes. Allstate has agreed to certification of the Settlement Class defined in the Settlement Agreement for settlement purposes only. The Settlement Class meets all the requirements of Federal Rule of Civil Procedure Rules 23(a) and (b)(3), which are discussed extensively in Plaintiffs' earlier briefs. There are no manageability issues in the settlement class context. *See, e.g., In re Insurance Brokerage Antitrust Litig.*, 579 F.3d at 257-58 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 306 (3d Cir. 2011) (en banc), *cert. denied*, 132 S. Ct. 1876 (2012) ("Moreover, the merits inquiry is particularly unwarranted in the

settlement context since a district court need not 'envision the form that a trial' would take, nor consider 'the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove' the disputed element at trial … .  In fact, the absence of evidentiary and trial manageability concerns that initially motivated our instruction to conduct a preliminary merits inquiry in the predominance context reinforces the 'key' distinction between certification of a litigation and settlement class."); *see also Amgen Inc. v. Connecticut Retirement Plans and Trusts Funds*, No. 11-1085, 2013 U.S. LEXIS 1862 (Feb. 27, 2013) (discussing Fed. R. Civ. P. Rule 23(b)).

## II.   THE PROPOSED SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL

### A.   The Standard for Preliminary Approval of A Settlement

The decision to approve a settlement is committed to the sound discretion of the Court. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).  The process of court approval of class action settlements involves (1) obtaining preliminary approval, (2) disseminating notice to the class, and (3) scheduling a fairness hearing to determine final approval of the proposed settlement.  *See In re Auto Refinishing Paint Antitrust Litigation.*, MDL No. 1426, 2006 U.S. Dist LEXIS 93936, at *1 (E.D. Pa. Dec. 28, 2006); *Carlough v. Amchem Prod., Inc.*, 158 F.R.D. 314, 320 (E.D.Pa. 1993).

When deciding whether to grant preliminary approval, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D.Md. 1983); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (holding that the "preliminary

determination establishes an initial presumption of fairness"). That determination must await the

final hearing, at which the fairness, reasonableness, and adequacy of the settlement is assessed.

*See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).

On preliminary approval, courts in this circuit have recognized that

> [T]he Court is required to determine only whether the proposed
> settlement discloses grounds to doubt its fairness or other obvious
> deficiencies such as unduly preferential treatment of class
> representatives or segments of the class, or excessive
> compensation of attorneys, and whether it appears to fall within the
> range of possible approval.

*Mehling*, 2007 U.S. Dist. LEXIS 79451, at *6 (internal citations omitted) (quoting *Thomas v.*

*NCO Fin. Sys.*, 2002 U.S. Dist. LEXIS 14157, at *14 (E.D. Pa. July 31, 2002)). Further, in

deciding whether to preliminarily approve a settlement, "the court need not reach any ultimate

conclusions on the issues of fact and law that underlie the merits of the dispute." *In re Auto.*

*Refinishing Paint Antitrust Litig.*, 2006 U.S. Dist. LEXIS 93936, at *4.

Preliminary approval "is granted unless a proposed settlement is obviously deficient."

*Jones v. Commerce Bancorp, Inc.*, No. 05-5600, 2007 U.S. Dist. LEXIS 52144, at *4 (D.N.J.

July 16, 2007). There is an initial presumption of fairness when a proposed settlement, which

was negotiated at arm's-length by counsel, is presented to the court for approval. *In re Corel*

*Corp. Sec. Litig.*, 293 F.Supp. 2d 484, 491 (E.D. Pa. 2003); Newberg § 11.41, at 90.

Here, the proposed settlement certainly meets these standards. The settlement represents

a significant recovery for the Settlement Class. As Plaintiffs will demonstrate in connection with

final approval, the settlement of this hard fought case is fair, reasonable, and adequate.

Authorization to disseminate notice is recognition by the Court that the settlement is in

the range of possible approval. *See, e.g., In re Chambers Dev. Co. Secs. Litig.*, 912 F. Supp. 822,

827 (W.D.Pa. 1995). It is akin to "a determination that there is what might be termed 'probable

cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."

*In re Traffic Executive Assoc. – Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

**B.      The Proposed Settlement Meets the Standard for Preliminary Approval**

The Court should preliminarily approve the proposed settlement because (1) it is the product of arm's-length, informed negotiations; (2) the settlement falls firmly within the range for approval; (3) the settlement does not grant improper treatment to certain Members of the Settlement Class; and (4) the proceedings are sufficiently advanced to allow for adequate evaluation of a proposed settlement that would account for litigation risks.

**1.      The Settlement Is the Product of Serious, Informed, and Non-Collusive Negotiations**

The Settlement Agreement is the result of the diligent efforts and intensive arm's-length negotiations among the settling parties.  Through the long course of their settlement discussions, the parties worked with both a private mediator and Judge Restrepo.  Allstate strenuously has denied and continues to deny each and all of the claims and contentions alleged in this case, and Allstate would appeal the Court's grant of summary judgment in favor of Plaintiffs if this case is not settled.  In this regard, and as the extensive record in this case amply demonstrates, Allstate vigorously and aggressively contested the claims in the case.  Nevertheless, Allstate has decided to settle this action in the manner and upon the terms and conditions set forth in the Settlement Agreement in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.

As the record in this case amply demonstrates, Class Counsel aggressively prosecuted this action, and therefore, recognize the expense and length of continuing litigation through a trial in this action, and appeals, all of which could take several years.  Taking into account the

uncertain outcome of any trial and appeals and other risks of litigation, Class Counsel believe that the Settlement Agreement confers substantial benefits upon the Settlement Class. Based upon their evaluation of the evidence and issues in this litigation, and risks on appeal, Class Counsel determined that the settlement is in the best interest of the Settlement Class.

### 2. The Settlement Has No "Obvious Deficiencies" and Falls Within the Range of Possible Approval

The proposed multi-million dollar settlement, plus going forward relief, has no "obvious deficiencies" and is well within the range of possible approval. Given the complexity of this case, and the risks on appeal, the proposed settlement is well within the range of possible approval and has no obvious deficiencies.

### 3. The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class

The relief provided in the settlement will benefit all Settlement Class Members equally. The settlement does not grant preferential treatment to segments of the Settlement Class.

### 4. The Proceedings Are Sufficiently Advanced To Permit Preliminary Approval of the Settlement

The stage of the proceedings at which this settlement was reached militates in favor of preliminary approval and, ultimately, final approval of the settlement. The agreement to settle did not occur until Class Counsel had conducted extensive discovery relating to the merits of the claims, including review of a substantial volume of documents and depositions of witnesses, including Allstate's experts, and work with their own expert. The parties have engaged in significant motion practice, including Plaintiffs' summary judgment motion (on which they obtained judgment on their individual claims as to liability only), motions to certify the class, and motions in limine to preclude expert testimony and reports. Class Counsel possess sufficient

information to make an informed judgment regarding the results that could be obtained through

further litigation, including consideration of possible outcomes on appeal.

### III. THE PROPOSED NOTICE PLAN AND PLAN OF DISTRIBUTION SHOULD BE PRELIMINARILY APPROVED

The Federal Rules of Civil Procedure provide that "[t]he court must direct notice in a

reasonable manner to all class members who would be bound by a proposed settlement …." Fed.

R. Civ. P. 23(e)(1)(B).  The Notice Plan set forth below (i) is the best practicable notice, (ii) is

reasonably calculated to apprise Settlement Class Members of the pendency of the Lawsuits and

of their right to object to, or exclude themselves, from the proposed settlement; (iii) is reasonable

and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, and

(iv) satisfies the requirements of Rule 23 and due process. *See* Declaration of Cameron Azari In

Support of Motion for Preliminary Approval (explaining notice plan).  In addition, Allstate will

comply with the requirements of the Class Action Fairness Act of 2005 to provide notification of

the proposed settlement to the appropriate federal and state officials.  28 U.S.C. § 1715; *see*

Settlement Agreement ¶ IX 3. Therefore, the Notice Plan should be approved.

### A. The Notice Plan and the Address Verification Form

The proposed Notice Plan has two parts:  (1) individual notice sent by first-class mail, in

the form of a post card, to all persons identified by Allstate as potential Settlement Class

Members ("Mailed Notice"); and (2) notice through a Website maintained by the Settlement

Administrator.  The Website will include copies of the Settlement Agreement (including

exhibits), a Long Form Notice and the Preliminary Approval Order.  The Website also will

identify important deadlines and provide answers to frequently asked questions.  The Website

will also contain Spanish translations of the Mailed Notice, Long Form Notice, Website home

page, and frequently asked questions.  In addition, the Website will contain a link to the Address

Verification Form for Former Policyholders to verify their addresses in accordance with this Agreement. *See* Settlement Agreement, ¶ IX 7.  The Mailed Notice will also be made available to all potential Settlement Class Members by request to the Settlement Administrator, who shall send it via first-class U.S. mail to any potential Settlement Class Member who requests it. *See* Settlement Agreement. ¶ IX 8.

**B.**      **Proposed Timing**

Plaintiffs propose the following schedule for class notice and further proceedings, subject to Court approval:

| Event | Proposed Timing |
|---|---|
| Entry of Preliminary Approval Order | As entered by the Court |
| Notice to be mailed to potential Settlement Class Members (the "Mailed Notice Date") | Allstate and the Settlement Administrator shall use their best efforts to complete the mailing of the Mailed Notice to potential Settlement Class Members within 60 days after entry of the Preliminary Approval Order. |
| Website Notice | Settlement Administrator shall maintain a Website for this settlement beginning on the Mailed Notice Date and remaining for at least ninety (90) days after the Effective Date. |
| Class Counsel to file papers in support of final approval and petition for fees, expenses, and incentive award | Thirty (30) days after the date of mailing of the Notice. |
| Filing and service of any objections to settlement, Settlement Agreement, request for fees, expenses, and incentive award, entry of appearance, or motion to intervene | The objection or motion to intervene must be postmarked and served on the Settlement Administrator, and filed with the Court, no later than forty-five (45) days after the Mailed Notice Date. |

| Event | Proposed Timing |
|---|---|
| Requests for Exclusion from Settlement Class | The request for exclusion must be mailed to the Settlement Administrator at the address provided in the Mailed Notice and must be postmarked no later than forty-five (45) days after the Mailed Notice Date. |
| Filing with Court, by Settlement Administrator, of List of all persons who timely requested exclusion from the Settlement Class ("Opt-Out List") and of Affidavit attesting to accuracy of Opt-Out List | Before Final Approval Hearing |
| Class Counsel to file any additional papers in support of the settlement | Five (5) days prior to the hearing on final approval. |
| Hearing on final approval | As set by the Court, at least approximately seventy (70) days after the Mailed Notice Date. |
| Deadline for submitting Address Verification Form | Twenty-one (21) days after Final Approval Hearing. |

## **CONCLUSION**

For the foregoing reasons, the Court should grant the motion for preliminary approval of this settlement with Allstate and authorize the dissemination of notice, by entering the Proposed Order submitted herewith.

Ira Neil Richards (PA ID No. 50879)
Kenneth I. Trujillo (PA ID No. 46520)
Arleigh P. Helfer, III (PA ID NO. 84427)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2000

Joseph E. Mariotti
CAPUTO & MARIOTTI, P.C.
730 Main Street
Moosic, PA 18507
(570) 342-9999

Of Counsel – Not Admitted in Pennsylvania:

John G. Jacobs
Bryan G. Kolton
JACOBS KOLTON, CHTD.
55 West Monroe Street, Suite 2970
Chicago, IL 60603
(312) 427-4000

17070539v.1

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MECADON<br><br>v.<br><br>ALLSTATE INDEMNITY CO.<br><br>Civil Litigation No. 09-5511-TJS<br>Judge Timothy J. Savage | KOLESAR, et al.<br><br>v.<br><br>ENCOMPASS INDEMNITY CO.<br><br>Civil Litigation No. 09-5510-TJS<br>Judge Timothy J. Savage |
| BUCARI, et al.<br><br>v.<br><br>ALLSTATE PROPERTY and CASUALTY<br>INSURANCE COMPANY<br><br>Civil Litigation No. 09-5512-TJS<br>Judge Timothy J. Savage | WARRICK<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY<br><br>Civil Litigation No. 09-6077-TJS<br>Judge Timothy J. Savage |

## CLASS LITIGATION SETTLEMENT AGREEMENT

This Class Litigation Settlement Agreement ("Settlement Agreement") is entered into

between Allstate Property and Casualty Company, Allstate Insurance Company, Encompass

Indemnity Company, Allstate Indemnity Company, Allstate Fire and Casualty Co., Encompass

Insurance Company of America, Encompass Home & Auto Insurance Co., Deerbrook Insurance

Co., and Northbrook Indemnity Co. (collectively "Allstate"), and Ann Warrick, Deborah

Kolesar, Ronald and Kim Bucari, and Nicole Mecadon (collectively "Plaintiffs"), individually

and on behalf of a class.

## RECITALS

WHEREAS, Deborah Kolesar filed an action in the United States District Court for the Eastern District of Pennsylvania, captioned *Kolesar v. Encompass Indemnity Co.*, No. 09-cv-5510; and

WHEREAS, Nicole Mecadon filed an action in the United States District Court for the Eastern District of Pennsylvania, captioned *Mecadon v. Allstate Indemnity Co.*, No. 09-cv-5511; and

WHEREAS, Ronald and Kim Bucari filed an action in the United States District Court for the Eastern District of Pennsylvania, captioned *Bucari v. Allstate Property and Casualty Insurance Co.*, No. 09-cv-5512; and

WHEREAS, Ann Warrick filed an action in the United States District Court for the Eastern District of Pennsylvania, captioned *Warrick v. Allstate Insurance Co.*, No. 09-cv-6077; and

WHEREAS, all four lawsuits were assigned to Judge Timothy J. Savage as related, and have proceeded jointly; and

WHEREAS, in March 2012, the Court ruled on the parties summary judgment motions; and

WHEREAS, subsequent to the filing of the lawsuits, Allstate began using certain information in its Home Office VIN database in connection with the provision of antitheft device discounts in Pennsylvania; and

2

WHEREAS, Allstate and Plaintiffs seek to settle the lawsuits in this single Settlement Agreement;

NOW, THEREFORE, Allstate and Plaintiffs agree to settle the lawsuits as follows, subject to Court approval:

## I.   DEFINITIONS

1.     Definitions:  The following definitions apply to the Settlement Agreement, including all exhibits:

(a)     **Affected Policy:**  An automobile insurance policy that: (1) included comprehensive coverage; (2) the insured vehicle(s), according to Allstate's Home Office VIN Database, had a passive antitheft device installed as manufacturer's standard equipment; and (3) the policy did not include at least a 10 percent discount on the comprehensive portion of the paid premium.

(b)     **Allstate:**  Collectively, Allstate Insurance Company, Allstate Property and Casualty Company, Allstate Indemnity Co., Encompass Indemnity Co., Allstate Fire and Casualty Co., Encompass Insurance Company of America, Encompass Home & Auto Insurance Co., Deerbrook Insurance Co., and Northbrook Indemnity Co.

(b)     **Allstate Counsel:**  Daniel M. Blouin of Seyfarth Shaw, LLP and Mathieu J. Shapiro of Obermayer Rebmann Maxwell and Hippel, LLP.

(c)     **Antitheft Discount:**  The 10% discount provided for in 75 Pa.C.S. §1799.1.

3

(d)    **CAFA Notice**:  Notification of this proposed settlement to certain state and federal officials in accordance with 28 U.S.C. § 1715.

(e)    **Class or Settlement Class**: The class as defined in paragraph III below.

(f)    **Class Counsel**: Collectively, Ira Neil Richards, Kenneth I. Trujillo, and Arleigh P. Helfer, III, of Schnader Harrison Segal & Lewis, LLP, and Joseph C. Mariotti of Caputo & Mariotti, P.C.

(g)    **Class Members or Settlement Class Members**:  Those current or former Allstate policyholders who fit the class definition in paragraph III below.  If the affected policy is a jointly-held policy, then all such joint policyholders of the policy in question shall be considered Settlement and Class Members.  If any holder of a jointly-held policy makes timely election to be excluded from the proposed Class, that policy will be excluded for all policyholders.

(h)    **Class Member Award**:  The amount Distribution Class Members are entitled to receive as defined in paragraph VI below.

(i).    **Class Period**:  The period from November 19, 2005 to December 31, 2013.

(j)    **Class Representatives, Named Plaintiffs, or Plaintiffs**:  Allstate has agreed, for purposes of this Settlement Agreement only, that Ann Warrick, Deborah Kolesar, Ronald and Kim Bucari, and Nicole Mecadon shall be appointed as Class Representatives.

(k)    **Consolidated Amended Complaint**:  The complaint that Plaintiffs will file on or about the time they move for preliminary approval of this settlement, which shall

4

be approved in advance by Allstate. The Consolidated Amended Complaint will name all settling Allstate companies as defendants, will allege claims on behalf of the Settlement Class defined herein, and will otherwise be consistent with the current complaints on file in the lawsuits. The Parties agree that Allstate is not obligated to file an answer to the Consolidated Amended Complaint.

(l)   **Court:**  The United States District Court for the Eastern District of Pennsylvania.

(m)   **Complaints:**  The complaints and amended complaints currently on file in the lawsuits.

(n)   **Current Policyholders:**  Settlement Class Members whose affected policies were still in effect as of December 31, 2013.

(o)   **Distribution Class Member:**  A Class Member who meets the criteria stated in paragraph VIII below.

(p)   **Distribution Date:**  All Class Member Awards for those receiving a check shall be distributed within 95 days after the Effective Date. All Class Member Awards for those receiving a credit shall be applied to their policy on their next renewal date of their affected policy beginning within 95 days of the Effective Date.

(q)   **Effective Date:**  The date upon which the Court's Final Order and Judgment becomes "final" for purposes of this definition. The Final Order and Judgment shall become "final": (1) if no appeal is taken therefrom, the first day after the date on which the time to appeal therefrom expires; (2) if an appeal is taken therefrom, the first day after the date on which all appeals therefrom, including

PHDATA 4815423_1

petitions for rehearing or re-argument, petitions for rehearing en banc, petitions

for review, and petitions for certiorari or any other form of review, have been

finally disposed of in a manner resulting in an affirmance of the Final Judgment

and Order; or (3) on a date after the signing and entry of the Final Judgment and

Order that counsel for the Settling Parties agree to in writing.

(r)     **Former Policyholders:** Settlement Class Members whose affected policies are

no longer in effect as of December 31, 2013.

(s)     **Lead Counsel:** Ira Neil Richards of Schnader Harrison Segal & Lewis, LLP.

(t)     **Parties:** Collectively, Plaintiffs, Allstate and the Class.

(u)     **Release:** The release and covenant not to sue set forth in Paragraph XV below.

(v)     **Releasees:** (a) Allstate Insurance Company, Allstate Property and Casualty

Company, Allstate Indemnity Company, Encompass Indemnity Company,

Allstate Fire and Casualty Co., Encompass Insurance Company of America,

Encompass Home & Auto Insurance Co., Deerbrook Insurance Co., and

Northbrook Indemnity Co., and all of the past and present divisions, parent

entities, and partners; and (b) all past and present officers, directors, shareholders,

agents, attorneys, employees, stockholders, successors, assigns, independent

contractors, and legal representatives of the entities set forth in (a) provided,

however, that nothing in this document is meant to release any claim against or

designate as a "Releasee" any company that wrote  or writes insurance other than

Allstate Insurance Company, Allstate Property and Casualty Company, Allstate

Indemnity Company, Encompass Indemnity Company, Allstate Fire and Casualty

PHDATA 4815423_1

Co., Encompass Insurance Company of America, Encompass Home & Auto

Insurance Co., Deerbrook Insurance Co., and Northbrook Indemnity Co.

(w)     **Settlement Agreement**:  The Agreement and the attached Exhibits, which are an

integral part of the Settlement Agreement and are incorporated herein in their

entirety by reference.

(x)     **Settlement Fund**:  The fund described in paragraph V below.

(y)     **Void Date**:  Sixty days after the date of issuance stated on checks issued under

the Settlement Agreement.

(z)     **Website**:  The website created for the purposes of publicizing and administering

this Settlement Agreement.

## II.     BACKGROUND

1.      Beginning in November 2009, Plaintiffs filed lawsuits in the Court naming

several Allstate companies as defendants.  The lawsuits were assigned to Judge Timothy J.

Savage and coordinated with other lawsuits brought by other plaintiffs against other insurance

companies.  Plaintiffs brought these lawsuits as proposed class actions, alleging that Allstate

failed to give certain of its Pennsylvania automobile insurance policyholders an antitheft device

discount.  Plaintiffs allege that Pennsylvania law requires Allstate to give an antitheft device

discount to all vehicles that have a device that qualifies, that Allstate has information in its Home

Office VIN Database that tells it which cars have such devices as standard equipment, and that

Allstate failed to use the information to apply the discount.  Plaintiffs allege that this conduct

violated 75 Pa. Cons. Stat. § 1799.1 and was a breach of Allstate's insurance contracts.

PHDATA 4815423_1

2.     Allstate denies any and all liability to Plaintiffs, the Settlement Class, or anyone else. Allstate maintains that it has complied fully with all of its obligations under Pennsylvania law and has fully satisfied its contractual obligation to its insureds with respect to the provision of antitheft device discounts. Allstate maintains, among other things, that it is exceeding its obligations under Pennsylvania law, including by giving discounts to a broader range of antitheft devices than Pennsylvania law requires; that Allstate cannot apply an antitheft device discount without an insured's confirming that a vehicle has a qualifying device; and that the Pennsylvania Insurance Commissioner has not issued regulations identifying which antitheft devices qualify for a discount. Before this litigation (and the companion cases filed against other insurance companies), there had been no decisions by any court in Pennsylvania relating to insurers' obligations under Section 1799.1 to provide a discount or to the devices that qualify for a discount. Allstate maintains that its practices are consistent with guidance from the Pennsylvania Insurance Commissioner.

3.     Before commencing the lawsuits, throughout their pendency, and during settlement negotiations, Class Counsel have conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims and potential claims to determine how best to serve the interests of the Plaintiffs and the Settlement Class. In the course of their examination, Class Counsel reviewed thousands of pages of documents and files, and conducted other formal and informal discovery. The parties exchanged expert reports, completed merits discovery, and moved for entry of summary judgment. In March 2012, the Court granted Plaintiffs' summary judgment motion as to certain vehicles but deferred decision on their motion for class certification. Allstate disagrees with the Court's summary judgment ruling; if the parties had not settled, Allstate would have pursued its appellate rights. Plaintiffs would argue

on appeal that the Court correctly decided the issues, but Plaintiffs recognize the significant risks of such an appeal. If the litigation continued, Plaintiffs would have amended their Complaints to assert claims on behalf of a class of all Pennsylvania insureds of all Allstate companies who had qualifying antitheft devices but did not receive an antitheft device discount based on evidence learned in discovery, which Plaintiffs allege show that all Allstate entities share common personnel, practices, facilities, and databases. Allstate would oppose any such amendment.

4.      Plaintiffs and Allstate have agreed to settle under the terms and conditions set forth herein. It is understood and acknowledged that Allstate has denied, and still denies, any liability, wrongdoing, and damages with respect to the matters alleged in the lawsuits, and that this Settlement Agreement is entered into as a compromise of disputed claims and for the purpose of avoiding the uncertainty, costs, and delay of continued litigation. The Parties agree that the settlement created by this Settlement Agreement is not and shall not be construed as an admission of liability, wrongdoing, or damages by Allstate, or as evidence of the validity of any of the claims asserted against Allstate.

5.      Based upon their independent discovery, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, the Plaintiffs and Class Counsel have agreed to settle the lawsuits pursuant to the provisions of this Agreement after considering, among other things: (1) the substantial benefits available to Plaintiffs and the Settlement Class under the terms of this Agreement; (2) the facts and circumstances relating to Allstate's revised practice pursuant to which it utilizes information in its Home Office VIN Database to prefill fields about antitheft devices during the insurance premium quoting process; (3) the risks and uncertainty of litigation, especially in complex litigation such as this, as well as the difficulties and delays inherent in such litigation, including but not limited to the risk of appellate reversal of

PHDATA 4815423_1

the Court's summary judgment ruling; and (4) the desirability of consummating this Settlement Agreement promptly to provide effective relief to the Plaintiffs and the Settlement Class.  Based on these considerations and their due diligence, Class Counsel believe that this Agreement is fair, reasonable, and adequate because it provides substantial benefits to the Settlement Class, is in the best interests of the Settlement Class, and fairly resolves all the claims alleged.

6.    Allstate continues to deny Plaintiffs' allegations and maintains that it consistently acted in accordance with its insurance policies and all governing laws and regulations. Nevertheless, Allstate wishes to conclusively resolve these litigations without the uncertainty and legal expense of further litigation, pursuant to the terms set forth herein.

## III.   CLASS DEFINITION

1.    Allstate has agreed, for the purposes of this Settlement Agreement only, to the certification of the following Class:

> All Allstate Insurance Company, Allstate Property and Casualty Company, Allstate Indemnity Company, Encompass Indemnity Co., Allstate Fire and Casualty Co., Encompass Insurance Company of America, Encompass Home & Auto Insurance Co., Deerbrook Insurance Co., and Northbrook Indemnity Co. policyholders in Pennsylvania, who at any point from November 19, 2005 through December 31, 2013:  (a) had a policy of automobile insurance that included comprehensive insurance coverage; (b) whose insured vehicle(s), according to Allstate's Home Office VIN System, had a passive antitheft device installed as manufacturer's standard equipment; and (c) did not receive at least a 10% discount on the comprehensive portion of the paid premium.

PHDATA 4815423_1

IV.    **CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY APPROVAL**

1.      Solely for the purpose of implementing this Agreement and effectuating the proposed settlement, the Parties stipulate that the Court may enter a Preliminary Approval Order certifying the Settlement Class and appointing the Plaintiffs as representatives of the Settlement Class.

2.      The Parties and their counsel agree that the settlement of this litigation is not a concession by Allstate that a litigation class could properly be certified in this litigation, and Plaintiffs and Class Counsel agree not to argue, in this or any other proceeding, that the fact of this settlement, or Allstate's agreement to certification of the Settlement Class, constitutes an admission or concession by Allstate that a litigation class could properly be certified in the cases against Allstate.

3.      After execution of this Agreement, the Parties shall promptly move the Court to enter the Preliminary Approval Order, substantially in the form of Exhibit 1 hereto, with any such modifications to which Lead Counsel and Allstate's Counsel agree.

V.    **RELIEF FOR THE CLASS:**

1.      **Net Settlement Fund:**  Within thirty business days after entry of the order of Final Approval, the Parties shall calculate the Net Settlement Fund.  The Net Settlement Fund is $9,000,000 less:  (a) the attorney's fees and expenses awarded to Class Counsel, (b) the payment of up to $500,000 for the costs of administration and notice, and (c) the incentive payments awarded to the Class Representatives.

PHIDATA 4815423_1

3.     **Going Forward Relief For Applicants:**  Commencing no later than the Effective Date, for a period of at least two years, and to the extent consistent with Pennsylvania law, Allstate shall continue to provide the Antitheft Discount to all car insurance applicants, including at renewal, if its Home Office VIN System (or any future internal database established by Allstate that serves the same function) shows that the applicant's car contains a passive antitheft device installed as manufacturer's standard equipment.

4.     **Internal Going Forward Relief:**  Commencing no later than the Effective Date, Allstate shall inform its agents to ask policy holders for whom Allstate's systems do not automatically provide the antitheft discount, whether they have a qualifying antitheft device on their vehicle.

## VI.   CLASS MEMBER AWARDS.

1.     Within forty-five business days after an order of Final Approval is entered, Allstate shall calculate the amount to which each Distribution Class Member is entitled.  The calculation shall be done as follows:

(a)     Allstate shall calculate 10% of the total comprehensive portion of the premiums paid by Distribution Class Members during the Class Period with respect to vehicles that (1) according to Allstate's Home Office VIN System had a passive antitheft device installed as manufacturer's standard equipment; and (2) did not receive at least a 10% discount on the comprehensive portion of the paid premium.

(b)     Allstate shall then calculate the percentage the Net Settlement Fund is of the number described in paragraph VI (1)(a) above, yielding the Settlement Ratio.

PHDATA 4815423_1

(c)     Allstate shall then calculate the Class Member Award for each Distribution Class Member by multiplying the Settlement Ratio times an amount equal to 10% of the comprehensive portion of the premiums paid by each Distribution Class Member during the Class period. Each Distribution Class Member, however, will receive an amount no greater than 6% of the comprehensive portion of such premiums. If the Net Settlement Fund is insufficient to pay Distribution Class Members 6% of the comprehensive portion of such premiums, then each Class Member Award shall be reduced pro rata.

## VII.   DISTRIBUTING THE CLASS MEMBER AWARDS

1.     All Distribution Class Members, and only Distribution Class Members, shall receive a Class Member Award.

2.     All Current Policyholders whose Affected Policies remain in effect on the Distribution Date shall receive a credit to the Affected Policy. In the event, however, it is not administratively feasible for Allstate to process a credit for a Current Policyholder who is a Distribution Class Member, Allstate or the appointed Claims Administrator shall mail the Distribution Class Member a check at the address in Allstate's records.

4.     For Current Policyholders who are no longer Allstate policyholders on the Distribution Date, Allstate or the appointed Claims Administrator shall send a check to their last known address.

5.     For Former Policyholders, Allstate or the appointed Claims Administrator shall send a check to the address contained in the Address Verification Form.

13

PHDATA 4815423_1

6.      For Class Members who became Distribution Class Members through the procedure provided in paragraph VIII (3), Allstate or the appointed Claims Administrator shall send a check to the address provided by the Class Member.

7.      The checks for Class Member Awards shall all be void if not cashed or deposited within 60 days of issuance.  The checks shall state this fact on their face in a manner that is easy to notice and read.  All funds from checks for Class Member Awards that are not cashed or deposited within 60 days from the date of insurance shall be returned to Allstate; provided, however, that Allstate shall dispose of any such returned and uncashed checks from Class Member Awards made to Current Policyholders pursuant to the terms of Allstate's practices and procedures governing unclaimed property and escheatment.

## VIII.   DETERMINING THE IDENTITY OF DISTRIBUTION CLASS MEMBERS

1.      All Current Policyholder Class Members will automatically be Distribution Class Members.

2.      All Former Policyholder Class Members will be Distribution Class Members if:

(a)     They return the Address Verification Form that is part of the Former Policyholder Notice within twenty-one days following entry of the Final Approval Order; or

(b)     In the alternative, they may print out the Address Verification Form available on the Settlement Website and return it to the Settlement Administrator within twenty-one days following entry of the Final Approval Order;

14

(c)     An Address Verification Form that is provided by any means listed in subparagraphs (a) and (b) above shall be deemed to constitute return of the Address Verification Form for purposes of this agreement.

3.      Former Policyholder Class Members who do not return the Address Verification Form contained in the Former Policyholder Notice because they were not mailed an Address Verification form can become Distribution Class Members if:

(a)     Within twenty-one days following entry of the Final Approval Order, they contact Class Counsel or the Settlement Administrator and state they believe they are a Class Member.  Any such person will be asked to provide their name, address, and approximate years of auto insurance with Allstate.  If the contact is with Class Counsel, Class Counsel shall provide that information to Allstate within 10 business days.

(b)     Allstate will have 10 business days after receipt of the name and address of any such person to determine if Allstate's records confirm that the person is a Class Member.

(c)     If Allstate's records confirm that the person is a Class Member, that person shall be added to the Class List and considered to be a Distribution Class Member, and Allstate shall promptly provide notice to Class Counsel of its determination in this regard.

(d)     If Allstate's records show that the person is not a Class Member, Allstate will promptly provide that information to the Settlement Administrator, who shall send a letter to that person informing him or her of the decision.

PHDATA 4815423_1

IX.   CLASS NOTICE AND ADMINISTRATION

1.      Allstate shall retain a Settlement Administrator to implement the terms of this Settlement Agreement, subject to the agreement of Class Counsel. Class Notice, in the form of a post-card, shall be mailed to potential Settlement Class Members substantially in form and content agreed to by Lead Counsel and Allstate's Counsel. Lead Counsel and Allstate's Counsel may, in their discretion, ask the Settlement Administrator or other third party to prepare the form of notice.

2.      Allstate shall pay all costs associated with providing notice to the Class and the costs of administering the Settlement Agreement. Allstate however shall be entitled to pay up to $500,000 from the Settlement Fund for expenses it incurs relating to settlement administration and class notice. Allstate shall provide to Class Counsel, if requested, copies of documentation reflecting such expenses. The Parties agree that expenses billed by the Settlement Administrator shall be deemed reasonable.

3.      Allstate shall comply with the CAFA Notice requirements set out in 28 U.S.C. § 1715.

4.      Before mailing the Mailed Notice, the Settlement Administrator shall run the addresses for Class Members once through the National Change of Address Database ("NCOA") to attempt to obtain a more current name and/or address for each potential Settlement Class Member. The Settlement Administrator may also perform such further reasonable search for a more current name and/or address for the potential Settlement Class Member, including potentially a search of the Lexis/Nexis name and address database or other database selected by Allstate, to the extent Allstate determines in its good faith and sole discretion that the address

16

contained in its records may no longer be current or accurate. The Settlement Administrator

shall send a copy of the Mailed Notice (including, where applicable, the Address Verification

Form) by first-class mail to each potential Settlement Class Member identified as a result of the

above search(es). Allstate and the Settlement Administrator shall use their best efforts to

complete the mailing of the Mailed Notice to potential Settlement Class Members within sixty

(60) days after entry of the Preliminary Approval Order. Other than the Website and the Mailed

Notice, the Parties and the Settlement Administrator shall not be obligated to provide any

additional notice of this settlement.

     5.     If any Mailed Notice mailed to any potential Settlement Class Member in

accordance with Paragraph IX (4) is returned to the Settlement Administrator as undeliverable,

the Settlement Administrator will promptly log each such Mailed Notice and provide copies of

the log to Allstate and Class Counsel as requested. If the mailing is returned to the Settlement

Administrator with a forwarding address, the Settlement Administrator shall forward the mailing

to that address. For the remaining returned mailings, if a Lexis/Nexis name and address search

or other non-NCOA database search was not previously conducted for those mailings as set forth

in Paragraph IX (4), such a search shall be conducted and those mailings shall be forwarded to

any new address obtained through such a search. In the event that any Mailed Notice is returned

as undeliverable a second time, no further mailing shall be required. It is agreed by the Parties

that the procedures set forth herein constitute reasonable and the best practicable notice under the

circumstances and an appropriate and sufficient effort to locate current addresses for Settlement

Class Members such that no additional efforts to do so shall be required.

PHDATA 4815423_1

6.      The Settlement Administrator shall maintain an automated, toll-free phone line through which Class Members can obtain answers to frequently asked questions or to leave a message in a voicemail box.

7.      The Settlement Administrator shall maintain a Website for this settlement beginning on the Mailed Notice Date and remaining for at least Ninety (90) days after the Effective Date. The Website shall include copies of this Agreement (including exhibits), the Mailed Notice, a detailed notice ("Website Notice") in the form agreed to by Lead Counsel and Allstate's Counsel and submitted to the Court for approval and the Motion for Preliminary Approval; the Preliminary Approval Order; identify important deadlines and provide answers to frequently asked questions; and may be amended as appropriate during the course of the settlement administration as agreed to by the Parties. The Website shall also contain Spanish translations of the Mailed Notice, the Website Notice, Website home page, and frequently asked questions. The Website shall also contain a link to the Address Verification Form for Former Policyholders (or their Legally Authorized Representatives) to verify their addresses in accordance with this Agreement.

8.      The Mailed Notice and the Website Notice, along with Spanish translations of this document, shall also be made available to all potential Settlement Class Members by request to the Settlement Administrator, who shall send them via first-class U.S. mail or by email to any potential Settlement Class Member who requests them.

X.    PROCEDURES FOR REQUESTS FOR EXCLUSION

1.      Settlement Class Members who wish to exclude themselves from the Settlement Class must submit timely, written requests for exclusion. To be effective, such a request must

18

include the Settlement Class Member's name and address, a clear and unequivocal statement that

the Settlement Class Member wishes to be excluded from the Settlement Class, and the signature

of the Settlement Class Member or the Legally Authorized Representative of the Settlement

Class Member. The request must be mailed to the Settlement Administrator at the address

provided in the Mailed Notice and must be postmarked no later than forty-five (45) days after the

Mailed Notice Date. Requests for exclusion must be exercised individually by the Settlement

Class Member, not as or on behalf of a group, class, or subclass, except that such exclusion

requests may be submitted by a Settlement Class Member's Legally Authorized Representative.

If the policy in question is a jointly held policy, then all such joint policyholders of the policy in

question shall be considered one Settlement Class Member. If any holder of a jointly held policy

makes a timely election to be excluded from the proposed Settlement Class, all joint

policyholders on that policy shall be deemed to be excluded from the Settlement Class.

2.     The Settlement Administrator shall promptly log each request for exclusion that it

receives and provide copies of the log and all such requests for exclusion to Allstate's Counsel

and Class Counsel as requested.

3.     The Settlement Administrator shall prepare a list of all persons who timely and

properly requested exclusion from the Settlement Class (the "Opt-Out List") and shall, before the

Final Approval Hearing, submit an affidavit to the Court attesting to the accuracy of the Opt-Out

List.

4.     All Settlement Class Members who do not timely and properly exclude

themselves from the Settlement Class shall be bound by this Agreement, and all their claims

19

PHDATA 4815423_1

shall be dismissed with prejudice and released as provided for herein, even if they never received actual notice of the litigation or this proposed settlement.

5.      The Settlement Administrator, in its sole discretion, shall determine whether a request for exclusion was timely submitted.  The Settlement Administrator's decision shall be final, binding, and non-appealable.

## XI.    PROCEDURES FOR OBJECTIONS AND MOTION TO INTERVENE

1.      Any Settlement Class Member or governmental entity who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed settlement or wishes to intervene in the litigation must serve on Class Counsel and Allstate's Counsel, and file with the Court, as applicable, a timely statement of the objection or motion to intervene, as well as the specific legal and factual reasons, if any, for each objection or motion, including any support the person or entity wishes to bring to the Court's attention and all evidence the person or entity wishes to introduce in support of the objection or motion to intervene, or be forever barred from objection or intervention.

2.      To be timely, the objection or motion to intervene must be filed with the Court and served on Lead Counsel and Allstate's Counsel no later than forty-five (45) days after the Mailed Notice Date.

3.      The objection or motion to intervene must contain at least the following:  (1) a heading that refers to these cases by case name and case number; (2) a statement of the specific legal and factual basis for each objection or intervention argument; (3) a statement whether the objecting or intervening person or entity intends to appear at the Final Approval Hearing, either in person or through counsel and, if through counsel, a statement identifying that counsel by

PHDATA 4815423_1

name, bar number, address, and telephone number; (4) a description of any and all evidence the objecting person or entity may offer at the Final Approval Hearing, including but not limited to the names, addresses, and expected testimony of any witnesses; all exhibits intended to be introduced at the Final Approval Hearing; and documentary proof of the objecting person's membership in the Settlement Class; and (5) a list of other cases in which the objector or intervenor or counsel for the objector or intervenor has appeared either as an objector or counsel for an objector in the last five years.  All objections shall be signed by the objecting Settlement Class Member (or his or her Legally Authorized Representative), even if the Settlement Class Member is represented by counsel.  Any motion to intervene must further comply with the Federal Rules of Civil Procedure and the Local Rules of the Court.  Furthermore, all objectors shall make themselves available to be deposed by any Party in the county of the objector's residence within seven (7) days of service of his or her timely written objection.  If an objector files an appeal from the Court's final Approval Order, the objector shall post a bond within 10 days of filing a notice of appeal in an amount sufficient to cover the amount of the Settlement Fund and the parties' costs and attorneys' fees that they anticipate incurring as a result of any such appeal.

4.      Any Settlement Class Member (and/or his or her attorney), or any attorney working for a governmental entity, who wishes to appear at the Final Approval Hearing to object to the settlement or who is representing or assisting a Settlement Class Member in connection with any objection to the settlement (including, but not limited to, by drafting or preparing papers for an objection on behalf of a Settlement Class Member) or wishes to intervene, must serve on Lead Counsel and Allstate's Counsel and file with the Clerk of the Court a notice of appearance no later than forty-five (45) days after the Mailed Notice Date.

PHDATA 4815423_1

5.      The right to object to the proposed settlement or to intervene in the litigation must be exercised individually by a Settlement Class Member or his or her attorney, and not as a member of a group, class, or subclass, except that such objections may be submitted by a Settlement Class Member's Legally Authorized Representative.

6.      Any Settlement Class Member who does not file a timely notice of intent to object in accordance with Paragraphs XI (1-5) above shall waive the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the proposed settlement. Settlement Class Members who object to the proposed settlement shall remain Settlement Class Members, and shall be deemed to have voluntarily waived their right to pursue an independent remedy against Allstate. To the extent any Settlement Class Member objects to the proposed settlement, and such objection is overruled in whole or in part, such Settlement Class Member will be forever bound by the Final Order and Judgment of the Court.

7.      In the event that any person or entity objects to or opposes this proposed settlement, or attempts to intervene in or otherwise enter the litigation, the Parties agree to use their best efforts to cooperate in the defense of the settlement. Notwithstanding the foregoing, it shall be Class Counsel's sole responsibility to respond to any objections made with respect to any application for the Attorneys' Fees and Expense Award.

## XII.   VERIFICATIONS

1.      Lead Counsel and Allstate's Counsel may, in their discretion, request that the Settlement Administrator or the Settlement Administrator's designee submit a declaration attesting to the soundness of the Parties' proposed notice plan if the Settlement Administrator or its designee is of the opinion that the plan is appropriate under the circumstances of this case.

22

PHDATA 4815423_1

The Parties agree to make any modifications in the notice plan necessary to obtain an opinion as to the appropriateness of the plan.  Before the Final Approval Hearing, the Settlement Administrator shall file with the Court proof that notice has been provided to the Class as required under the Settlement Agreement.

    2.      After calculating the Net Settlement Fund and the Settlement Ratio, Allstate shall provide Class Counsel the numbers and an explanation of how the calculation was performed.

    3.      After Allstate has distributed all Class Member Awards, Allstate will file with the Court appropriate verification that it made the distributions required under the Settlement Agreement.

## XIII.  ATTORNEY'S FEES AND EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

    1.      Before the Final Approval Hearing, Class Counsel will file with the Court a Petition for an award of attorney's fees and reimbursement of expenses.  Allstate will not object to any request for attorney's fees that does not exceed one-third of the $9,000,000 Settlement Fund, plus reimbursement of expenses.  The attorneys' fees and expenses shall be paid by wire transfer from Allstate to Lead Counsel within 10 business days after the Effective Date.  Lead Counsel shall be responsible for allocating any fees and expenses that the Court awards;

    2.      Class Counsel will petition the Court for incentive awards for the Plaintiffs. Allstate will not object to any incentive award request that is no more than $5,000 per Plaintiff(s) in each of the four cases ($20,000 in total).  The incentive awards shall be paid by a single lump sum wire transfer from Allstate to Lead Counsel within 10 days of the Effective Date.

PHDATA 4815423_1

## XIV.   FINAL APPROVAL, DISMISSAL OF CLAIMS AND RELEASES

1.      The Parties shall request the Court to enter the Final Order and Judgment, to be submitted with the Motion for Final Approval of the Settlement, substantially in the form of Exhibit 2, with such modifications as Lead Counsel and Allstate's Counsel approve.

## XV.   RELEASE OF CLAIMS

1.      The Named Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-out List approved by the Court, shall be bound by this Agreement, and all of their claims, as provided under this Agreement, shall be dismissed with prejudice and released, even if they never received actual notice of the cases or their settlement.

2.      As of the Effective Date, the Named Plaintiffs, and all other Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court, on behalf of themselves and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether they have received actual notice of the proposed settlement, shall be conclusively deemed to have fully released and discharged Allstate and all of Allstate's Releasees of and from all Released Claims, and agree that they shall not now or hereafter initiate, maintain, or assert any Released Claims against the Releasees in any other court action or before any administrative body (including any state department of insurance or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicating body.  Without in any way limiting the scope of the Release described herein, this Release covers, without limitation, any

24

PHDATA 4815423_1

and all claims for attorneys' fees, costs, or disbursements incurred by Class Counsel or any other

counsel representing the Named Plaintiffs or Settlement Class Members, or by the Named

Plaintiffs or Settlement Class Members, or any of them, in connection with or related in any

manner to the lawsuits, the settlement of the lawsuits, the administration of such settlement,

and/or the Released Claims except to the extent otherwise specified in the Agreement.

      3.    "Released Claims" include any and all claims for relief or causes of action, known

or unknown, pursuant to any theory of recovery, including but not limited to claims based in

contract or tort, common law or equity, and federal, state, or local law, statute, ordinance, or

regulation, arising from or related to the allegations in this Action, from any and all claims,

known and unknown, that have been, could have been, or should have been asserted in the

lawsuits relating to vehicle antitheft device premium discounts for automobile insurance policies

issued in Pennsylvania.  Released Claims also include but are not limited to claims for breach of

contract, breach of the duty of good faith and fair dealing, negligence, bad faith, willful and

wanton conduct, breach of statutory duties, actual or constructive fraud, intentional or negligent

misrepresentations, fraudulent inducement, outrageous conduct, statutory and consumer fraud,

breach of fiduciary duty or quasi-fiduciary duty, unfair or deceptive business or trade or

insurance acts or practices, insurance premium overcharges or a refund or rebate of premiums,

anticipatory repudiation, restitution, rescission, and for injunctive or declaratory relief relating to

passive antitheft device premium discounts for automobile insurance policies issued in

Pennsylvania.  Released Claims also include all claims for compensatory, consequential, and

punitive or exemplary damages, damages based on statutory violations, remedies, or penalties,

damages in excess of actual damages, interest, attorneys' fees, damages for physical or bodily

injury, or other injuries to person, property, or psyche, damages for emotional distress or mental

anguish, loss of consortium, lost wages, loss of income, attorneys' fees, interest, costs, penalties, and any other damages, whether known or unknown, alleged or not alleged in the lawsuits, suspected or unsuspected, contingent or matured, under federal, state, or local law, which the Named Plaintiffs or any Settlement Class Member had, now has, or may in the future have with respect to any conduct, act, omissions, facts, matters, transactions, or oral or written statements or occurrences prior to the Effective Date involving, based on, relating to, arising out of, or in any way connected with, directly or indirectly, the allegations in the Complaints or any Amended Complaint (including any Consolidated Amended Complaint), and any claims that were, could have been, or should have been brought by the Named Plaintiffs or any Settlement Class Member concerning passive antitheft device premium discounts for automobiles insured in Pennsylvania.

4.      Without in any way limiting the scope of the Release described in this Settlement Agreement, the Named Plaintiffs, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court, also expressly waive all rights under Section 1542 of the Civil Code of the State of California, realizing and understand that Section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

5.      To the extent that, notwithstanding the choice of law provisions in the Agreement, California or other law may be applicable, the Named Plaintiffs, and the Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List

PHDATA 4815423_1

approved by the Court, hereby expressly agree that the provisions, rights, and benefits of Section 1542 and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction which may be applicable herein are hereby knowingly and voluntarily waived and relinquished by the Named Plaintiffs and the Settlement Class Members to the fullest extent permitted by law solely in connection with unknown claims constituting Released Claims, and the Named Plaintiffs and the Settlement Class Members hereby agree and acknowledge that this is an essential term of this Release. In connection with this Release, the Named Plaintiffs and the Settlement Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein. Nevertheless, the Named Plaintiffs and the Settlement Class Members acknowledge that a portion of the consideration received herein is for a Release with respect to future damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of the Named Plaintiffs and the Settlement Class Members in executing this Release fully, finally, and forever to settle and release all matters, known or otherwise, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action) constituting Released Claims.

6.      Allstate and all Releasees shall release the Class Representatives and Class Counsel and their respective agents, employees, contractors, successors, predecessors, heirs, assigns, and any person acting for or on behalf of the Class Representatives or Class Counsel from any and all claims related to the Released Claims or related to the institution, prosecution or settlement of the Released Claims that Allstate or any Releasee may have or claim against them.

7.    Nothing in this Release shall preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed therein.

## XVI.  MISCELLANEOUS PROVISIONS

1.    **Settlement Non-approval.**  In the event this Settlement Agreement does not receive final approval, or otherwise become effective, the litigation shall return to the exact status it was in before execution of this Settlement Agreement.

2.    **Disputes Concerning Implementation of the Settlement Agreement.**  Any disputes between the Parties concerning the implementation of any aspect of the Settlement Agreement shall be submitted for resolution to the presiding trial judge, and the trial judge's rulings on any such matters shall be final and non-appealable.

3.    **Counterpart Execution.**  This Agreement may be executed in any number of counterparts and will be finding when it has been executed by all necessary signatories.

4.    **Termination of Settlement Agreement.**

(a)    **Bilateral right to Terminate.**  Any of the Settling Parties may terminate this Settlement Agreement prior to the Effective Date at his, her or its sole option and discretion by providing written notice of the termination to counsel for the other parties if: (1) the Court, or any appellate Court(s), rejects, modifies, or denies approval of any portion of this Settlement Agreement that the terminating party in its (or their) sole judgment and discretion believes is material, including, without limitation, the terms of the Class relief, the provisions relating to notice, the definition of the Class, and the Release; or (2) the Court, or any appellate

PHDATA 4815423_1

Court(s), does not enter or completely and unconditionally affirm any portion of the Final Order and Judgment that the terminating party in its (or their) sole judgment and discretion believes is material. To be effective, such notification must be received by the opposite Party within five business days of the occurrence of the event upon which the termination is proposed to be based. Notwithstanding the foregoing, Plaintiffs may not terminate this Settlement Agreement because of the amount of attorneys' fees and expenses awarded by the Court or any appellate Court(s), or the failure of the Court or any appellate Court(s) to approve any provision of paragraph XIII of this Settlement Agreement.

(b)  **Allstate's Unilateral Right to Terminate**. Allstate may also unilaterally, in its sole discretion, withdraw from and terminate this Settlement Agreement by providing written notice of termination to Class Counsel if: (1) those persons who elected to exclude themselves from the Class together number more than two percent of all known potential Class Members; or (2) Plaintiffs elect to exclude themselves from the Class or object to the proposed settlement.

(c)  **Deadline for Termination**. Allstate must exercise any unilateral option to withdraw from and terminate this Settlement Agreement under paragraph XVI(4)(b) above no later than fifteen days immediately preceding the scheduled Final Approval Hearing Date or five business days after notice of the event prompting the right to terminate, whichever occurs first.

(d)    **No Obligation to Exercise Right.**  If an option to withdraw from and terminate this Settlement Agreement arises under this Paragraph XVI(4)(a) or XVI(4)(b), none of the Settling Parties is required for any reason or under any circumstance to exercise that option.

(e)    **Effect of Termination.**  If this Settlement Agreement is terminated pursuant to this Section, then: (1) this Settlement Agreement shall be null and void and shall have no force or effect, and no party to this Settlement Agreement shall be bound by any of its terms, except for the terms of this paragraph XVI(4)(e); (2) this Settlement Agreement, all of its provisions (including, without limitation, any provisions regarding Class certification), and all negotiations, statements and proceedings relating to them shall be without prejudice to the rights of any of the Settling Parties, each of whom shall be restored to their respective positions existing immediately before the execution of this Settlement Agreement; (3) this Settlement Agreement, any provision of this Settlement Agreement (including, without limitation, the provisions regarding Class certification), or the fact of this Settlement Agreement having been made, shall not be admissible or entered into evidence for any purpose whatsoever; and (4) any order or judgment entered after the date of this Settlement Agreement, including, without limitation, any order certifying the Class, will be vacated and will be without any force or effect.

PHDATA 4815423_1

5.  **Retention of Records.**

    (a)     Allstate shall retain all returned Settlement Class Notices and correspondence from Class Members, in either original format or electronic duplicate, for a period of up to two years after the Effective Date. After this time, Allstate may destroy any such records that it has in its possession. Except as expressly stated above, nothing in this Settlement Agreement shall be construed to require Allstate to retain records beyond what its discretionary record retention policies are.

    (b)     Within 60 days after the Effective Date, Class Counsel and Plaintiffs shall return to Allstate or destroy all confidential documents, data and information, and all copies thereof in their possession, custody, or control, provided by Allstate to Class Counsel or anyone they employed or retained in these lawsuits, except that Class Counsel may retain any such confidential documents, data, and information, and all copies that are incorporated into or a part of any briefs, exhibits, or other filings with the Court in any related cases until such cases are fully completed. Class Counsel may also retain one copy of the pleadings, briefs, and motions filed in the lawsuits, subject to maintaining the confidentiality of any material that has been filed under seal. Within 75 days after the Effective Date, Class Counsel shall deliver a letter to Allstate certifying their compliance with this paragraph.

6.  **Interests of the Class.** Class Counsel and Plaintiffs represent that they are seeking to protect the interests of the entire Class and believe that this Settlement Agreement is

PHDATA 4815423_1

in the best interests of the Class. Plaintiffs agree not to request exclusion from the Class or to encourage others to do so.

7.     **Entire Agreement.** This Settlement Agreement sets forth the entire agreement between the Settling Parties relating to the settlement of the Lawsuits and may not be altered or modified except by written instrument executed by Class Counsel and Allstate's Counsel. There are no other representations or warranties between the Settlement Parties relating to the subject matter of this Settlement Agreement that are not contained in this Agreement or that are being relied upon by either party to this Settlement Agreement.

8.     **Choice of Law.** This Settlement Agreement shall be governed by the substantive laws of Pennsylvania.

9.     **Postmarks.** Whenever a Class Member is required to provide notice or submit materials by a certain date, the notice or submission shall be timely only if it is postmarked or received on or before the date it is due and is, in fact, received by the intended recipient within 10 days thereafter. Notwithstanding the foregoing, however, objections to the Settlement Agreement and notices of appearance must be actually delivered to and received by the intended recipient on or before the date they are due.

10.    **Extensions.** The Settling Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement. Such extensions must be in writing to be enforceable.

11.    **Unambiguous Contract.** All parties agree that this Settlement Agreement is clear and unambiguous and was drafted by counsel for the parties at arm's length, and that no

32

PHDATA 4815423_1

parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, its intent, or the circumstances under which it was made or executed.

12.     **Further Assurances.**  The Settling Parties agree that upon the request of any one of them, they will execute and deliver such further documents and undertake such further action as may reasonably be required to effect any of the agreements and covenants contained in this Settlement Agreement.

13.     **Parties Bound.**  This Settlement Agreement shall be binding upon and inure to the benefit of the Settling Parties, the Class Members, the Releasees, and their respective heirs, successors and assigns.

14.     **Communications Regarding Settlement.**  The Settling Parties and their counsel agree that prior to the date that the Settlement Class Notice is mailed, no party or counsel shall make any public announcements or other mass and/or generalized communications regarding this Settlement Agreement, including, without limitation, communications with the public, media or press.

15.     **Right to Communicate with Class Member.**  The Settling Parties agree that Allstate retains its right to communicate with and respond to inquiries from present and past customers, including Class Members.  These communications may be oral and/or in writing, and may be done directly or through designated agents.

PHDATA 4815423_1

**AGREED AS TO FORM AND SUBSTANCE:**

SCHNADER HARRISON SEGAL &
LEWIS LLP

Dated: _4/25/14_                    By: _____

IRA NEIL RICHARDS
KENNETH I. TRUJILLO
ARLEIGH P. HELFER, III

Attorneys For Plaintiffs
Ann Warrick, Deborah Kolesar,
Ronald Bucari, Kim Bucari,
Nicole Mecadon
and the Putative Class


SEYFARTH SHAW LLP

Dated: _4-25-14_                    By: _____

DANIEL M. BLOUIN

Attorneys for
Allstate Property and Casualty Company
Allstate Insurance Company
Encompass Indemnity Company
Allstate Indemnity Company
Allstate Fire And Casualty Co.
Encompass Insurance Company of America
Encompass Home & Auto Insurance Co.
Deerbrook Insurance Co.
Northbrook Indemnity Co.

16798918v.1

PHDATA 4815423_1

*EXHIBIT 1*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MECADON | KOLESAR, et al. |
|---|---|
| v. | v. |
| **ALLSTATE INDEMNITY CO.** | **ENCOMPASS INDEMNITY CO.** |
| Civil Litigation No. 09-5511-TJS<br>Judge Timothy J. Savage | Civil Litigation No. 09-5510-TJS<br>Judge Timothy J. Savage |
| BUCARI, et al. | WARRICK |
| v. | v. |
| **ALLSTATE PROPERTY and CASUALTY<br>INSURANCE COMPANY** | **ALLSTATE INSURANCE COMPANY** |
| Civil Litigation No. 09-5512-TJS<br>Judge Timothy J. Savage | Civil Litigation No. 09-6077-TJS<br>Judge Timothy J. Savage |

## PRELIMINARY APPROVAL ORDER

**AND NOW**, this _____ day of _____, 2014, upon consideration of the

Plaintiff's Motion for Preliminary Approval of the Class Action Settlement (Document No. ____),

and after hearing, it is **ORDERED** that the motion is **GRANTED**.

**IT IS FURTHER ORDERED** as follows:

       1.     The Class Action Settlement Agreement ("Settlement Agreement")

(Document No. ____) is preliminarily approved.

       2.     The terms and conditions of the Settlement Agreement are incorporated in

this Order.

3.   The following Settlement Class is certified for settlement purposes only, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), as follows:

> All Allstate Insurance Company, Allstate Property and Casualty Company, Allstate Indemnity Company, Encompass Indemnity Co., Allstate Fire and Casualty Co., Encompass Insurance Company of America, Encompass Home and Auto Insurance Co., Deerbrook Insurance Co., and Northbrook Indemnity policyholders in Pennsylvania who, at any point from November 19, 2005 through December 31, 2013: (a) had a policy of automobile insurance that included comprehensive insurance coverage; (b) whose insured vehicle(s), according to Allstate's Home Office VIN System, had a passive antitheft device as manufacturer's standard equipment; and (c) did not receive at least a 10% discount on the comprehensive portion of the paid premium.

4.   If the settlement is not finally approved, Allstate's stipulation to certification of the Settlement Class shall be null and void *ab initio,* and may not be used or relied upon by the plaintiff or any member of the Settlement Class for any purpose, nor may the findings set forth in this Order for purposes of Settlement Class Certification be used in connection with contested class certification proceedings or for any other purpose.

5.   The Settlement Agreement entered into between the parties as of April 25, 2014, appears to be fair, reasonable and adequate to the Settlement Class.

6.   The prerequisites to a class action under Fed. R. Civ. P. 23(a) have been satisfied for settlement purposes.

a.   There are thousands of Settlement Class members;

b.   The claims of the Class Representative are typical of those of the other members of the Settlement Class;

c.  There are questions of fact and law that are common to all members of the Settlement Class;

d.  The Class Representative will fairly and adequately protect the interests of the Settlement Class; and

e.  Counsel for the Settlement Class, experienced in complex commercial and class action litigation, have and will continue to adequately represent the Settlement Class.

7.      This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) for settlement purposes because:

a.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

b.  Questions of fact and law common to members of the Settlement Class predominate over any questions affecting only individual members.

8.      Plaintiffs Nicole Mecadon, Deborah Kolesar, Ronald and Kim Bucari and Ann Warrick are appointed as the Class Representatives.

9.      The following attorneys are appointed as counsel for the Settlement Class: Ira Neil Richards, Kenneth I. Trujillo, and Arleigh P. Helfer, III, of Schnader Harrison Segal & Lewis, LLP, and Joseph C. Mariotti of Caputo & Mariotti, P.C. ("Class Counsel").

10.     Ira Neil Richards, Kenneth I. Trujillo, and Arleigh P. Helfer, III are appointed as Lead Counsel for the Settlement Class.

11.    Epiq Systems is appointed as the Settlement Administrator.

12.    Pursuant to Fed. R. Civ. P. 23(e), a final approval hearing will be held on

_____, 2014, at _____, in Courtroom 9A at the United States Courthouse, 601

Market Street, Philadelphia, Pennsylvania 19106, to determine:

a.    whether this action satisfied the criteria for class certification set forth in Fed.
     R. Civ. P. 23(a) and (b);

b.    whether the proposed settlement is fair, reasonable and adequate;

c.    whether final approval should be granted;

d.    whether a final judgment should be entered dismissing the claims of the
     Settlement Class with prejudice;

e.    an award of attorneys' fees and out-of-pocket expenses; and

f.    other such matters as the Court may deem appropriate.

13.    In accordance with Section IX of the Settlement Agreement, Allstate shall

conduct a reasonable search of its computer/electronic databases to ascertain the name and last-

known address of each potential Settlement Class Member.

14.    Before mailing the Class Notice (including the Address Verification

Form), the Settlement Administrator shall run these addresses through the National Change of

Address Database to attempt to obtain a more current name and/or address for each potential

Settlement Class Member. The Settlement Administrator may also perform such further

reasonable search for a more current name and/or address for the potential Settlement Class Member, as provided in the Settlement Agreement.

15.    No later than _____, 2014, Allstate, through the Settlement Administrator, shall provide notice to the Settlement Class by:

a. Causing a copy of the Class Notice to Current Policyholders, in the form attached as Exhibit 1 to the Settlement Agreement, and the Class Notice to Former Policyholders, along with the Address Verification Form, in the form attached as Exhibit 2 to the Settlement Agreement, to be mailed by first-class mail to each potential Settlement Class Member identified as a result of the searches described in paragraphs 13 and 14 of this Order.

b. Re-mailing any Class Notices returned as undeliverable in accordance with Section IX, Paragraph 5 of the Settlement Agreement.

16.    No later than _____, 2014, the Settlement Administrator shall establish the Settlement Website prescribed in Section IX, Paragraph 7 of the Settlement Agreement.

17.    The Settlement Website shall include:

a. a copy of the Settlement Agreement, the Class Notice, and the Preliminary Approval Order;

b. identify all deadlines;

c. provide answers to frequently asked questions;

5

d.   may be amended as needed during the course of the Settlement Administration, as agreed to by the Parties;

e.   contain Spanish translations of the Class Notice, Website home page, and frequently asked questions; and

f.   contain a link to the Address Verification Form for Former Policyholders to verify their addresses in accordance with the Settlement Agreement.

18.   The Website shall be maintained until at least _____.

19.   The Settlement Administrator shall maintain a toll-free VRU telephone system containing recorded answers to frequently asked questions, along with an option permitting Class Members to leave messages in a voicemail box.

20.   No later than _____, the Settlement Administrator shall file proof of mailing of the Class Notice required by Paragraph 15 of this Order.

21.   The manner of giving notice as prescribed in this Order satisfies the requirements of Fed. R. Civ. P. 23 and due process, constitutes the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled to notice.

22.   Each Settlement Class Member shall have the right not to be included in the Settlement Class by mailing a request for exclusion to the Settlement Administrator postmarked no later than _____.  any Settlement Class Member who wishes to exclude himself or herself from the Settlement Class must comply with the terms set forth in the Settlement Agreement and the Class Notice.  Requests for exclusion must be exercised

6

individually by a Settlement Class Member, not as or on behalf of a group, class, or subclass,

except that such exclusion requests may be submitted on behalf of an individual Settlement Class

Member by that Settlement Class Member's Legal Authorized Representative. If the policy in

question is a jointly-held policy, then all such joint policyholders of the policy in question shall

be considered one Settlement Class Member. If any holder of a jointly-held policy makes a

timely election to be excluded from the proposed Settlement Class, all joint policyholders on that

policy shall be deemed to be excluded from the Settlement Class.

23.     Any Settlement Class Member who does not submit a timely, written

request for exclusion from the Settlement Class will be bound by all proceedings, orders, and

judgments in this litigation, even if the Settlement Class Member has previously initiated or

subsequently initiates individual litigation or other proceedings encompassed by the claims

released in this case as specified in Sections X and XV of the Settlement Agreement, and even if

such Settlement Class Member never received actual notice of this litigation or this proposed

settlement.

24.     Unless and until they have submitted a timely request for exclusion from

the Settlement Class, Settlement Class Members and their legally authorized representatives are

preliminarily enjoined from:

a.   filing, commencing, prosecuting, intervening in, or participating as plaintiff,

claimant. Or class member in any other lawsuit or administrative, regulatory,

arbitration, or other proceeding in any jurisdiction;

b.   filing, commencing, or prosecuting a lawsuit or administrative, regulatory,

arbitration, or other proceeding as a class action on behalf of any Settlement Class

Members (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action); and

c.   attempting to effect an opt-out of a group, class, or subclass of individuals in any lawsuit or administrative, regulatory, arbitration, or other proceeding based upon the claims released in the Settlement Agreement.

25.   No later than _____, the Settlement Administrator shall file and serve on counsel a list of all persons who have timely opted out of the Settlement Class with its determinations as to whether any request to opt out of the Settlement Class was not submitted timely; and it shall provide written notification to any Settlement Class Member whose request to opt out of the Settlement Class was untimely.

26.   No later than _____, each Settlement Class Member who does not timely opt out of the Settlement Class shall have the right to object to the settlement or to the request by Class Counsel for an award of attorneys' fees and out-of-pocket expenses by filing written objections with the Clerk of Court and serving copies of the objections on Lead Counsel and Allstate's counsel.

27.   Objections must comply with Section XI of the Settlement Agreement and the Class Notice, and must contain at least the following:  (1) a heading that refers to this action by case name and case number; (2) a statement of the specific legal and factual basis for each objection or intervention argument; (3) a statement whether the objecting or intervening person or entity intends to appear at the Final Approval Hearing, either in person or through counsel and, if through counsel, a statement identifying that counsel by name, bar number, address, and telephone number; (4) a description of any and all evidence the objecting person or entity may

8

offer at the Final Approval Hearing, including but not limited to the names, addresses, and expected testimony of any witnesses, all exhibits intended to be introduced at the Final Approval Hearing, and documentary proof of the objecting person's membership in the Settlement Class; and (5) a list of other cases in which the objector or intervenor or counsel for the objector or intervenor has appeared either as an objector or counsel for an objector in the last five years.

28.    Failure to timely file and serve written objections in compliance with Section XI of the Settlement Agreement and Paragraph 27 of this Order will preclude a Settlement Class Member from objecting at the Final Approval Hearing.

29.    All briefs, memoranda, petitions and affidavits to be filed in support of final approval of the settlement and for an award of attorneys' fees and out-of-pocket expenses by Class Counsel shall be filed no later than _____.

30.    The Court retains exclusive jurisdiction over this action to consider all matters arising out of or connected with the Settlement Agreement.

_____
Timothy J. Savage, J.

17065165v.1 17065165v.1

9

*EXHIBIT 2*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MECADON | KOLESAR, et al. |
|---|---|
| v. | v. |
| **ALLSTATE INDEMNITY CO.** | **ENCOMPASS INDEMNITY CO.** |
| Civil Litigation No. 09-5511-TJS<br>Judge Timothy J. Savage | Civil Litigation No. 09-5510-TJS<br>Judge Timothy J. Savage |
| BUCARI, et al. | WARRICK |
| v. | v. |
| **ALLSTATE PROPERTY and CASUALTY INSURANCE COMPANY** | **ALLSTATE INSURANCE COMPANY** |
| Civil Litigation No. 09-5512-TJS<br>Judge Timothy J. Savage | Civil Litigation No. 09-6077-TJS<br>Judge Timothy J. Savage |

## FINAL APPROVAL ORDER

AND NOW, this _____ day of _____, 2014, upon consideration of the

Plaintiff's Motion for Final Approval of the Settlement (Document No. ___), and after hearings

on _____ and _____, and the Findings of Fact and Conclusions of Law

(Document No. ___), the motion is **GRANTED**.

IT IS FURTHER ORDERED as follows:

1.   The Settlement Agreement entered into between the parties on

_____ ("Settlement Agreement"), which is incorporated into this Order, is

**APPROVED** as fair, reasonable and adequate.

2.      The settlement claims of the Class Representatives and the Class Members are compromised, settled, released, remised, discharged and dismissed as against the Defendants on the merits and with prejudice in accordance with the terms of the Settlement Agreement.

3.      The Class Representatives and the Class Members and all persons claiming by or through them are **PERMANENTLY BARRED** and **ENJOINED** from instituting, commencing and/or prosecuting, directly or indirectly, any claim, suit or proceeding against the Defendants with respect to any and all settled claims against the Defendants.

4.      Pursuant to the terms of the Settlement Agreement, the Allstate entities shall pay the applicable share of the Net Settlement Fund to Distribution Class Members; pay the costs reasonably incurred in connection with administering and distributing Net Settlement Fund proceeds to Distribution Class Members; and, for a period of two years,  provide the Antitheft Discount to all car insurance applicants, including at renewal, if its Home Office VIN System (or any future internal database established by Allstate that serves the same function) shows that the applicant's car contains a passive antitheft device installed as manufacturer's standard equipment..

5.      Class Counsel is awarded from the Settlement Fund attorneys' fees in the amount of $_____, and out-of-pocket expenses in the amount of $_____. Lead Counsel shall make an allocation of the attorneys' fee award among Class Counsel.

6.      In consideration for their service, the Class Representative(s) in each case is awarded $_____ ($_____ in total), which shall be paid from the Settlement Fund.

2

7.     These awards shall be distributed to Class Counsel pursuant to the terms of the Settlement Agreement.

8.     The parties are directed to carry out their obligations under the Settlement Agreement and in compliance with this Order.

9.     This action is **DISMISSED WITH PREJUDICE.**

10.    The Court retains jurisdiction over this action, the parties, and each of the Class Members for all matters relating to this action and the Settlement Agreement, including those matters relating to the administration, interpretation, effectuation and/or investment of the Settlement Agreement and this Order.

11.    **FINAL JUDGMENT** shall be entered pursuant to Fed. R. Civ. P. 58.

_____

Timothy J. Savage, J.

17065762v.147065762v.1

3